2015-1017

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

───────────────────────────

PROLITEC, INC.,

*Appellant,*

v.

SCENTAIR TECHNOLOGIES, INC.,

*Appellee.*

───────────────────────────

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board
in *Inter Partes* Review No. IPR2013-00180

─────────────────────────────────────────────

## APPELLEE'S OPENING BRIEF

─────────────────────────────────────────────

Joshua B. Pond
Kilpatrick Townsend & Stockton LLP
607 14th Street, NW, Suite 900
Washington, D.C. 20005
(202) 508-5854
jpond@kilpatricktownsend.com

Adam H. Charnes
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston-Salem, NC 27101
(336) 607-7382
acharnes@kilpatricktownsend.com

D. Clay Holloway
Tiffany L. Williams
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
(404) 815-6500
(404) 815-6555
cholloway@kilpatricktownsend.com
tiwilliams@kilpatricktownsend.com

February 26, 2015                    *Counsel for Appellee*

# CERTIFICATE OF INTEREST

Counsel for ScentAir Technologies, Inc. certifies the following:

1.      The full name of every party represented by us is:

ScentAir Technologies, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

Same.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are:

ScentAir Holdings, Inc.

4.      The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this court are:

Joshua B. Pond, Adam H. Charnes, D. Clay Holloway, Tiffany L. Williams – Kilpatrick Townsend & Stockton LLP

W. Karl Renner, Kevin Greene, Chris Marchese – Fish & Richardson, P.C.

Dated: February 26, 2015

_____

Joshua B. Pond

## STATEMENT OF RELATED CASES

Appellee ScentAir Technologies, Inc. is not aware of any other appeal from this *inter partes* review of U.S. Patent No. 7,930,068 before this or any other appellate court.  Another case between the same parties involving U.S. Patent No. 7,712,683 was the subject of a separate *inter partes* review and is currently on appeal to this Court in 2015-1020.

Appellant Prolitec, Inc., on May 15, 2012, brought an infringement suit against ScentAir in the United States District Court for the Eastern District of Wisconsin, based on the '068 and '683 patents.  *Prolitec, Inc. v. ScentAir Techs., Inc.*, No. 2:12-cv-483-RTR (E.D. Wisc.).  Pursuant to an unopposed motion, on May 17, 2013, the district court stayed proceedings pending the *inter partes* reviews of the '683 and '068 patents before the Patent Trial and Appeal Board and any appeals.  That stayed proceeding may be directly affected by this Court's decision in the current appeal.

# TABLE OF ABBREVIATIONS

| Abbreviation | Explanation |
| --- | --- |
| ScentAir | Appellee ScentAir Technologies, Inc. (Petitioner below) |
| Prolitec | Appellant Prolitec, Inc. (Patentee below) |
| Prolitec Appeal Br. | Opening Brief of Prolitec (Doc. No. 20) |
| IPR | *Inter partes* review |
| PTAB or Board | Patent Trial & Appeal Board, United States Patent & Trademark Office |
| Final Written Decision | July 18, 2014 PTAB Decision concluding that all challenged claims of the '068 patent are unpatentable under 35 U.S.C. § 103 (A001-A026). |
| The '068 patent | U.S. Patent No. 7,930,068 to Robert et al. (A027-A043). |
| Challenged Claims | Claim Nos. 1, 3-5, 9-13, 15, 22-24, 26, 28, and 33 of the '068 Patent. |
| Petition | March 7, 2013 Petition for Inter Partes Review of U.S. Patent No. 7,930,068 (A1000-A1064). |
| Decision to Institute | July 30, 2013 PTAB Decision to institute this IPR (A1065-A1083). |
| Response | October 11, 2013 Patentee Prolitec's Response to Petition (A1084-A1129). |
| Reply | December 20, 2013 Petitioner ScentAir's Reply to Prolitec's Response (A1130-A1151). |
| Privas | PCT International Publication No. WO 96/23530 to Privas (Translation at A1152-A1179). |
| Le Pesant | U.S. Patent No. 6,712,287 to Le Pesant et al. (A1180-A1193). |

Shedd Decl.

October 11, 2013 Declaration of Prolitec expert, Timothy A. Shedd, Ph.D., in support of Prolitec's Response (A1194-A1266).

Garris Decl.

March 7, 2013 Original Declaration of ScentAir expert, Charles A. Garris, Jr., Ph.D., in support of ScentAir's Petition (A1273-A1328).

Garris Reply Decl.

December 20, 2013 Reply Declaration of Dr. Garris in support of ScentAir Reply to Prolitec's Response to Petition (A1815-A1834).

Garris Supplemental Reply Decl.

January 13, 2014 Supplemental Reply Declaration of Charles A. Garris in support of ScentAir Reply to Prolitec's Responses to Petition (A1329-A1333).

Shedd Common Depo. Tr.

Transcript of Dr. Shedd's December 12, 2013 deposition regarding issues common to IPR2013-179 and -180 (A1665-A1811).

Shedd '068 Depo. Tr.

Transcript of Dr. Shedd's December 12, 2013 deposition regarding the '068 patent (A1543-A1664).

Garris Common Depo. Tr.

Transcript of Dr. Garris' September 27, 2013 deposition regarding issues common to IPR2013-179 and -180 (A2062-A2107).

Garris '068 Depo. Tr.

Transcript of Dr. Garris' September 27, 2013 deposition regarding the '068 patent (A2108-A2141).

Pros. Hist.

Prosecution History of the '068 patent (A1340-A1542).

Lynn

U.S. Patent No. 5,924,597 to Lynn (A1334-A1339).

Express Waiver

Patent Owner Waiver of Preliminary Response Pursuant to 37 C.F.R. § 42.107(B) (A1812-A1814).

# TABLE OF CONTENTS

Page

STATEMENT OF JURISDICTION.................................................................1

STATEMENT OF THE CASE........................................................................1

STATEMENT OF THE ISSUES.....................................................................3

STATEMENT OF THE FACTS .....................................................................4

I.     Brief Overview of the State of the Art at the Time of the Alleged
Invention of the '068 Patent ..............................................................4

     A.     Le Pesant .................................................................................4

     B.     Privas ......................................................................................6

II.    The '068 Patent................................................................................10

III.   Prosecution History Of The '068 Patent .......................................11

IV.   *Inter Partes* Review before PTAB .................................................13

SUMMARY OF ARGUMENT ..................................................................17

ARGUMENT ..............................................................................................19

I.     Standard of Review..........................................................................19

II.    The Board Did Not Err In Finding The Claims Unpatentable. .....20

     A.     The Board's Determinations Are Supported By Substantial
Evidence. ..............................................................................21

          1.     Substantial Evidence Supports The Board's
Conclusion That Le Pesant Discloses "A Plurality of
Control Schemes." ..................................................21

               (i)     Substantial Evidence Supports The Board's
Conclusion That Control Schemes Include
Those Programmed By The User. .................................25

(ii)     The Board's Conclusion That Multiple *Pre-Installed* Control Schemes May Be Installed on Le Pesant's Device Does Not Mischaracterize The Claim Language. .....................................................26

2.     Substantial Evidence Supports The Board's Finding That Privas Discloses Volume-Based Control. ........................28

B.     In Reaching Its Legal Conclusion, the Board Properly Considered Its Analysis of the Claim Elements In The Context Of The Claims As A Whole. .................................................31

C.     The Board Did Not Err In Its Determination That Le Pesant and Privas Are Properly Combinable.................................................34

III.     Alternatively, This Court Should Affirm The Board's Legal Conclusion of Obviousness Based On Le Pesant Alone. ...........................37

CONCLUSION .................................................................................................39

# TABLE OF AUTHORITIES

## Cases

*E-Pass Techs. v. 3Com Corp.*,
  343 F.3d 1364 (Fed. Cir. 2003)..........................................................25

*Fleming v. Escort Inc.*,
  774 F.3d 1371 (Fed. Cir. 2014)..........................................................20

*Gardner v. TEC Sys., Inc.*,
  725 F.2d 1338 (Fed. Cir. 1984)..........................................................32

*Graham v. John Deere Co.*,
  383 U.S. 1, 148 U.S.P.Q. 459 (1966)..................................................21

*In re Bigio*,
  381 F.3d 1320 (Fed. Cir. 2004)..........................................................34

*In re Gartside*,
  203 F.3d 1305 (Fed. Cir. 2000)..........................................................20

*In re Kotzab*,
  217 F.3d 1365 (Fed. Cir. 2000)..........................................................20

*In re Morsa*,
  713 F.3d 104 (Fed. Cir. 2013)............................................................20

*Jennings v. Stephens*,
  135 S. Ct. 793 (2015)........................................................................37

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398, 82 U.S.P.Q. 2d 1385 (2007) ................................. 21, 39

*Morsa v. Patent and Trademark Office*,
  134 S. Ct. 1317 (2014).......................................................................20

*On-Line Careline, Inc. v. Am. Online, Inc.*,
  229 F.3d 1080 (Fed. Cir. 2000)..........................................................31

*Prolitec, Inc. v. ScentAir Techs., Inc.*,
  No. 2:12-cv-483-RTR (E.D. Wisc.)..................................................... ii

*Randall Mfg. v. Rea*,
  733 F.3d 1355 (Fed. Cir. 2013)..........................................................20

*Ryko Mfg. Co. v. Nu-Star, Inc.*,
  950 F.2d 714 (Fed. Cir. 1991)............................................................32

*Senju Pharm. Co. v. Apotex Inc.*,
  746 F.3d 1344 (Fed. Cir. 2014)...........................................................27

*Stratoflex, Inc. v. Aeroquip Corp.*,
  713 F.2d 1530 (Fed. Cir. 1983).........................................................27

*United States v. Am. Ry. Express Co.*,
  265 U.S. 425 (1924)...........................................................................37

## Rules and Regulations

37 C.F.R. § 42.107(B) ........................................................................ iv

37 C.F.R. § 42.73 ................................................................................1

37 C.F.R. § 90.3(a)(1) ........................................................................1

## Statutes

28 U.S.C. § 1295(a)(4)(A) ..................................................................1

35 U.S.C. § 103 .................................................................................21

35 U.S.C. § 103(a) ...................................................................... 12, 21

35 U.S.C. § 318 ..................................................................................1

35 U.S.C. § 319 ..................................................................................1

## STATEMENT OF JURISDICTION

This case arises from a Final Written Decision of the Patent Trial and Appeal Board, issued July 18, 2014, determining that claims 1, 3-5, 9-13, 15, 22-24, 26, 28, and 33 of Appellant Prolitec, Inc.'s U.S. Patent No. 7,930,068 are unpatentable, upon completion of *inter partes* review No. IPR2013-00180, pursuant to 35 U.S.C. § 318 and 37 C.F.R. § 42.73.  Final Written Decision, A001-26.  Prolitec filed its notice of appeal on August 22, 2014, pursuant to 37 C.F.R. § 90.3(a)(1).  This Court has exclusive jurisdiction over Prolitec's appeal of the PTAB's Final Written Decision in this IPR under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 319.

## STATEMENT OF THE CASE

Prolitec presents this Court with a routine obviousness appeal, limited to the issues of whether the Patent Trial and Appeal Board erred in determining that prior art references Le Pesant and/or Privas disclose liquid diffusion according to (1) a plurality of control schemes and (2) volume-based control—as recited in challenged claims 1 and 24 of Prolitec's '068 patent—and (3) that one of ordinary skill would have combined those two references.  Prolitec does not appeal the Board's unpatentability findings as to any of the other limitations of these two independent claims, nor as to any of the other 14 challenged claims—dependent claims 3-5, 9-13, 15, 22, 23, 26, 28, and 33.  Nor does Prolitec appeal claim

construction, despite its efforts to sweep in *de novo* review on that issue.  Instead, as ScentAir will show in this brief, the Board's rulings as to all three issues were well-founded on substantial evidence and should be affirmed.

The '068 patent claims a liquid diffusion appliance and method of "venturi"[1] diffusion according to "control schemes," particularly for scenting various indoor spaces.  The patent was improvidently granted on the sole basis of "venturi" diffusion, something that even Prolitec recognizes—in the '068 patent itself—as being "known in conventional liquid diffusion devices."

ScentAir petitioned for *inter partes* review of the '068 patent.  In its Petition, ScentAir asserted the claims of the '068 patent were rendered obvious in view of Le Pesant, a U.S. patent issued to a French inventor, alone or in combination with Privas, a published international application of another French inventor, among others.  The Board agreed and instituted the IPR on those bases.

In response, Prolitec sought to distinguish the prior art, not on the basis of venturi diffusion as it had during prosecution, but rather on the basis of volume-based control—despite having previously failed to dispute a Patent Examiner's finding during prosecution that volume-based control was known in the art.  Prolitec also advanced theories that Le Pesant and Privas fail to disclose "a

---

[1] "Venturi" has been interpreted by the Board, consistent with the "venturi effect," to mean "a structure having a constriction that causes an increase in the velocity of flow of a fluid and a corresponding decrease in fluid pressure thereby creating suction."  Decision to Institute, A1074.

plurality of control schemes" by attempting to read into the claims limitations that control schemes should be limited to only "*pre-installed* control schemes."

The Board found that, under the broadest reasonable interpretation, the claims are not so narrow. Instead, in its Final Written Decision, the Board identified substantial evidence of a plurality of control schemes in Le Pesant, volume-based selection of a control scheme in Privas, and multiple reasons to combine the two references. Prolitec has now challenged whether the Board's underlying factual determinations are in fact supported by substantial evidence; they are, and this Court should affirm this routine obviousness ruling.

## STATEMENT OF THE ISSUES

Whether the Board erred in finding the challenged claims to controlled liquid diffusion of the '068 patent obvious, as supported by substantial evidence, over the combined disclosures of Le Pesant's plurality of control schemes and Privas' volume-based control?

Whether the challenged claims of the '068 patent are obvious over Le Pesant alone, in light of Le Pesant's disclosure of diffusing liquids to a variety of room volumes and the state of the art?

# STATEMENT OF THE FACTS

## I.    Brief Overview of the State of the Art at the Time of the Alleged Invention of the '068 Patent

At the time of the application that led to the '068 patent, it was known to use programmable devices for the diffusion of active substances, such as odor-bearing products.  Le Pesant, A1185, 1:6-8.  In particular, liquid diffusion devices typically employed venturi diffusion, operated according to control schemes related to the volume of space to be treated.  *Id.* at A1188, 7:6-27; *id.* at A1189, 10:6-8; Privas, A1168, ¶ 2.

### A.    Le Pesant

The Le Pesant reference—a U.S. patent to French inventors issued March 30, 2004—describes a programmable device for the diffusion of active substances, including odour-bearing products, into a room such as an office, a meeting room, a lounge and a bedroom.  Le Pesant, A1180, Abstract; *id.* at A1185, 1:6-8, 2:33-35.  As illustrated in Figures 1 and 2 (reproduced below), Le Pesant's diffusion device 1 is a box structure containing a number of tanks 6a, 6b, 6c of various liquids or scents to be diffused, and nebulization units 4a, 4b, 4c linked to each tank.  *See id.* at A1181; *id.* at A1187, 5:61-6:2.

4



Le Pesant's diffusion device controls nebulization units 4a, 4b, 4c through programming chosen by the user or by pre-established programs of various sequences, specifying flow rate and periodic timing to overcome scent fatigue in varied applications described by the reference. Le Pesant, A1188, 7:40-46; *id.* at A1190, 11:21-31, 12:10-13; 12:64-67; *id.* at A1191, 13:18-22. Specifically, Le Pesant's control electronics 12 utilizes (1) a pre-established program to control *flow rate* via air pump 10 speed and (2) software structured around the time it takes to establish odour peak emission cycles to control *periodic timing*. Le Pesant, A1188, 7:44-46; *id.* at A1191, 13:1-6. Le Pesant further describes that the device can be used to scent "the volume of residential rooms and meeting rooms, typically containing air volumes of between 30 and 100 cubic meters." Le Pesant, A1189, 10:8-10.

Le Pesant's varied "Application" examples include (1) "generating odor peaks" to assist with sleep and waking ("EXAMPLE 1"); (2) waking a patient from a coma with an "emission cycle" of scents from the patient's past ("EXAMPLE

5

2"); (3) a "predetermined sequence" to assist with quitting smoking ("EXAMPLE 3"); (4) diffusing a single odor or one odor at a time "according to a programmed and timed sequence" ("EXAMPLE 5"); and (5) overcoming scent fatigue with a combination of odors in "time related sequence" ("EXAMPLE 5"). Le Pesant, A1191, 13:35-A1192, 16:7.

Le Pesant further describes multiple control schemes within a particular Application. For example, as described in EXAMPLE 5, the choices of control schemes are based on the particular selection of odor combination: "programming is designed for the diffusion of a combination of odor mixtures by two or three [or more] outlets, and even changing the pair or group of three in time-related sequence." Le Pesant, A1192, 15:26-35. Each combination of odors has a unique control scheme: "To do this, in particular, it would be possible to program the operation of the device according to the type of odour so that the emission duration, the intervals and the waiting durations strengthen the olfactory need and the desire to smell the chosen odour," thereby avoiding scent fatigue. *Id.* at A1192, 15:36-54.

## B.  Privas

The Privas reference—an international application of French origin published August 8, 1996—sets forth a liquid diffusion appliance for fumigating indoor spaces such as offices, public places, and hotels with fluid products

6

including deodorizers, fragrances, and insecticides.  Privas, A1153, Abstract; *id.* at A1161, ¶ 1.  Privas describes an *industrial* embodiment (Figure 1) and a *household* embodiment (Figure 3) of the appliance.  In both embodiments, a frequency of spray applications is dependent on the extent of air circulation in the airspace being treated, on the rate at which air is replenished in the indoor area, and on the nature of the product being distributed.  *Id.* at A1166, ¶ 3.

In the *industrial* embodiment (as illustrated in Figure 1, reproduced below), the system includes an aeraulic probe S (indicated by the box in the upper right corner labeled "S" in Figure 1), which directly measures the air flow rate through the air conditioning system.  Privas, A1166, ¶ 3; *id.* at A1175.  As a result, a *set point* or control scheme of the frequency of spray applications is directly based on measured air circulation.



FIG. 1

Conversely, in the *household* embodiment (as illustrated in Figure 3,
reproduced below, note the *absence* of an aeraulic probe S), the system is a
"simplified design that is particularly well suited to household use." Privas,
A1168, ¶ 2; *id.* at A1177.



FIG. 3

Because the aeraulic probe S is eliminated from the "simplified" household design, the system uses a lookup table or chart to determine the *set point* or control scheme of the frequency of spray applications based on "the volume and the nature of the room being treated," as a substitute for a direct air circulation measurement. Privas, A1168, ¶ 2.

## II.    The '068 Patent

Like Le Pesant, the '068 patent, filed in 2007 (three years after Le Pesant's 2004 issuance and eleven years after Privas' 1996 publication) discloses a method and system of controlling a liquid diffusion appliance to treat the air within an enclosed space with a scent, disinfectant or other bio-technical substance. '068 patent, A027, Abstract; *id.* at A039, 3:24-29. As illustrated in Figures 2 and 2a (reproduced below), the liquid diffusion appliance 100 has a cartridge 102 for holding a liquid 104 to be diffused or dispersed within an enclosed space and a controller 106. '068 patent, A038, 2:57-62; *id.* at A029.



The claims describe the alleged invention as to control schemes—method claim 1, for example, specifies: "a plurality of control schemes for the appliance which based on characteristics of the liquid and a level of treatment desired for the space, each of the control schemes specifying operational parameters for the appliance including a flow rate of liquid, and a periodic timing of operation of the diffusion means." '068 patent, A042, 1:25-30. Volume-based control is further specified by claim 1: "selecting one of the control schemes based on the volume of

the space to be treated." *Id.* at A042, 1:41-42. System claim 24 similarly specifies an apparatus with control schemes, each "corresponding to a particular volume within the space." *Id.* at A043, 11:19-20.

Prolitec directs this Court's attention beyond these claim limitations, to exemplary-but-unclaimed portions of the specification: according to Prolitec's Appeal Brief, "a user of the improved appliance may use a dial to select among different control schemes." Prolitec Appeal Br., p. 3. Indeed, Prolitec invokes "dial" settings four times over the course of its 3-page "Patented Invention" section, including Figure 4's table of "Dial Settings (DS)." Prolitec Appeal Br., pp. 3-5. Dial settings are not, however, a limitation of the challenged claims, as acknowledged by the PTAB: "The specification states that each control scheme '*may, for example*, be associated with a particular dial setting or other selectable setting' and that each setting '*may* be defined as suitable for a particular volume.'" Final Written Decision, A008 (emphasis added by PTAB).

## III.   Prosecution History Of The '068 Patent

During prosecution, the Patent Examiner found no novelty in a liquid diffusion appliance operated according to *control schemes* associated with *volumes* of space for diffusion—the very limitations at issue in this appeal. Rather, Prolitec's amendment of all independent claims to specify *venturi* diffusion was the sole basis for allowance, even though Prolitec admitted from the very

11

beginning of prosecution that venturi diffusion was long "known" in the art.  Pros. Hist., A1344, ll. 17-19; *id.* at A1447-50.

Specifically, in the first Office Action of June 24, 2009, the Examiner rejected all three application independent claims as unpatentable under 35 U.S.C. § 103(a) over U.S. Patent No. 5,924,497 to Lynn ("Lynn"), a liquid diffusion device for scenting the rooms of a building through an HVAC system.  Pros. Hist., A1404; Lynn, A1334, Abstract.  The Examiner noted that Lynn disclosed all of the subject matter of the application's three independent claims, except for application claim 1's and claim 25's *volume* aspects.  Pros. Hist., A1404-05.  The Examiner decided, however, that this aspect failed to render the claims patentable:

> At the time the invention was made, ***it would have been obvious to a person of ordinary skill in the art for Lynn's user to program the dispersal of the fragrance based on the size of the room***. One of ordinary skill in the art would have been motivated to do this ***since it is well known that the size of the room affects the dispersal needed to get the desired effect***. Lynn implicitly points to this by disclosing that the user has the ability to program a specific control scheme for a specific room (col. 2, lines 52-54 [noted above as to control scheme]). Therefore, it would have been obvious to modify Lynn to obtain the invention as specified in claims 1 and 25.

Pros. Hist., A1404-05 (emphasis added).

Strikingly, Prolitec did not dispute the Examiner's conclusion in its response to the office action.  Rather, Prolitec amended application claims 1 and 25 (issued claims 1 and 24 respectively) to further specify a "diffusion means including a *venturi*."  Pros. Hist., A1428; *id.* at A1433; *id.* at A1437-38.  Prolitec made this

12

amendment despite its own admission in the very application that started

prosecution that venturi diffusion was "known in conventional liquid diffusion

devices." *Id.* at A1344.

Unfortunately, the Examiner apparently missed this admission since it was

never acknowledged or discussed on the record. Pros. Hist., A1447-50. The

presumably inadvertent oversight led to the improvident grant of the '068 patent,

since the next action allowed the amended claims. *Id.* at A1447-50.

## IV.   *Inter Partes* Review before PTAB

In response to Prolitec's infringement accusations in the Eastern District of

Wisconsin, ScentAir—a global leader in scent diffusion services—filed a Petition

requesting *inter partes* review of asserted claims 1, 3-5, 9-13, 15, 22-24, 26, 28,

and 33 of the '068 patent. Petition, A1000-64. In support of ScentAir's Petition,

Dr. Charles A. Garris, Jr.—a tenured Professor in the Department of Mechanical

and Aerospace Engineering at The George Washington University, who has

conducted research in the areas of fluid mechanics, mass transfer, fluid/pumping

machinery, HVAC, and associated control systems—provided a detailed

explanation as to how each claim limitation of the challenged '068 Patent claims is

met by Le Pesant and/or by the combination of Le Pesant and Privas. Garris Decl.,

A1274, ¶¶ 4-5; *id.* at A1279-84, ¶¶ 19-27; *id.* at A1290-94, ¶¶ 39-44.

Prolitec expressly waived the filing of a patent owner preliminary response. Express Waiver, A1812-13.  In a July 30, 2013 Decision to Institute, the PTAB instituted *inter partes* review of the challenged claims as obvious from Le Pesant, alone or in combination with Privas.  Decision to Institute, A1082.  A number of other grounds were deemed by the PTAB to be redundant with the instituted grounds (Decision to Institute, A1081)—not "denied" as misleadingly characterized by Prolitec.  Prolitec Appeal Br., pp. 7, 12.

In reaching its Decision to Institute, the Board relied extensively on Dr. Garris' testimony, which it determined to be "credible and support[ing] ScentAir's contention that a person of ordinary skill in the art would have known to modify the system of Le Pesant to incorporate control schemes corresponding to the volume of the space to be treated by the diffusion appliance," as well as "credibly set[ting] forth articulated reasoning with rational underpinning to support the combination and a conclusion of obviousness."  Decision to Institute, A1079; A1081.

Following institution, Prolitec filed its Response to the Petition.  Response, A1084-A1129.  In contrast to Prolitec's stance during prosecution, Prolitec effectively conceded in its response that the *venturi* feature is disclosed in the prior art, here Le Pesant.  *Id.* at A1099-A1100.  Instead, Prolitec sought to distinguish the prior art based on volume-based control, *despite* having previously failed to

14

dispute during prosecution that volume-based control was known. Pros. Hist., A1344; A1428; A1433; A1437-38. In support of its Response, Prolitec submitted a Declaration from Timothy A. Shedd, Ph.D., a professor in the Mechanical Engineering Department at the University of Wisconsin-Madison. Shedd Decl., A1194-A1266.

Through these concessions, Prolitec narrowed the issues for PTAB determination. Specifically, Prolitec contended there are *only* three "missing elements" in the prior art (thus acquiescing to disclosure of all other elements of the 16 challenged claims—including venturi diffusion): a plurality of control schemes (claims 1 and 24), determining a volume (claim 1), and selecting a control scheme based on volume (claims 1 and 24). Response, A1099-A1106. Prolitec also presented a laundry list of reasons as to why the prior art would not be combined by one of ordinary skill. Response, A1117-24.

Prolitec's Response conveniently sidestepped the Examiner's explicit finding during prosecution noted above that "it is well known that the size of the room affects the dispersal needed to get the desired effect." Pros. Hist., A1404-05; Garris Decl., A1281-82, ¶ 22. But Prolitec's own expert, Dr. Shedd, echoed the Examiner in describing volume as "a fundamental parameter in determining concentration" in liquid diffusion and, further, one that is easy for users to employ for control. Shedd Decl., A1228; *id.* at A1230.

15

In its Reply, ScentAir and Dr. Garris countered each of these arguments: demonstrating how volume-based control is obvious in view of Le Pesant (alone *and* in combination with Privas), as well as how the plurality of control schemes limitation is found in Le Pesant.  Reply, A1137-43; Garris Reply Decl., A1816-26, ¶¶ 9-14, 15-21, 22-27, 28-32; *id.* at A1828-30, ¶¶ 40-45.  Dr. Garris reiterated that one of ordinary skill—a person having a bachelor's degree in mechanical engineering and about two years of experience in the liquid diffusion area—would find the challenged claims obvious.  Garris Reply Decl., A1816, ¶ 8; Garris '068 Depo. Tr., A2127, p. 76, ll. 18-21.

ScentAir and Dr. Garris also carefully reiterated the many reasons that a person of ordinary skill in the relevant art would combine Privas with Le Pesant:

- Privas and Le Pesant fall within the same field of endeavor—liquid diffusion devices.  Garris Reply Decl., A1826-27, ¶ 33-37.

- The World Intellectual Property Organization classified Privas and the '068 patent in the same field.  *Id.* at A1827, ¶ 37.

- Le Pesant's teaching of scenting rooms of 30 to 100 cubic meters, in combination with its purpose, suggests considering volume in selecting a control scheme (echoing the Examiner's determination regarding Lynn).  Le Pesant, A1185, 1:46-49; Garris Decl., A1281, ¶ 22; Garris Reply Decl., A1821-22, ¶ 22; Pros. Hist., A1404-05.

- The various diffusers share common designs (atomizing: '068 patent, Privas, Le Pesant and evaporating: Privas, Le Pesant).  Garris Reply Decl., A1826-27, ¶¶ 35-36.

16

- Privas is "reasonably pertinent" to the particular problem addressed by the '068 patent, *i.e.*, maintaining a substantially constant level of treatment within a space. Garris Reply Decl., A1827-28, ¶¶ 38-39.

- Combining Le Pesant and Privas requires merely a simple design change, and so is no more than an application of known techniques yielding predictable results. Garris Reply Decl., A1829, ¶ 43.

- Volume-based control is one of only three categories of liquid diffusion variables identified by Dr. Shedd and Le Pesant. Garris Decl., A1280-82, ¶¶ 21-22, 40; Garris Reply Decl., A1816-18, ¶¶ 9-14, 25; Shedd Decl., A1206, ¶ 26; Le Pesant, A1189, 9:41-46, 10:3-10; *id.* at A1191, 13:1-6, 13:26-29; *id.* at A1192, 15:43-47, 15:55-57.

- Of these three categories, volume is the only variable "fundamental" to liquid diffusion and one that is easy to control. Shedd Decl., A1228, ¶ 65; *id.* at A1230, ¶ 69; Garris Reply Decl., A1830, ¶ 45.

In its Final Written Decision, agreeing with ScentAir on nearly all issues, the Board concluded, as detailed below, that all original claims were unpatentable over the prior art. Final Written Decision, A024-25.

## SUMMARY OF ARGUMENT

The present garden-variety obviousness appeal seeks to overturn the Board's underlying determinations with respect to the disclosure of (1) a plurality of control schemes, (2) volume-based selection of a control scheme by Le Pesant and/or Privas, and (3) the reasons to combine these two references. Yet Prolitec has not demonstrated that the Board's determinations on these limited issues were not well-founded on substantial evidence. Each of Prolitec's three arguments to this Court falls short:

17

First: substantial evidence supports the Board's determination that Le Pesant discloses a plurality of control schemes, including "pre-established" programs of "various sequences" for controlling flow rate and periodic timing, yet Prolitec argues that the broadest reasonable interpretation of this term excluded control schemes programmed by the user. If Prolitec wanted to limit the claims to "a plurality of *pre-installed* control schemes," it could have done so at any time during prosecution or through a motion to amend during the *inter partes* review proceeding. Instead, Prolitec wants this Court to fix a validity problem that Prolitec failed to address when it had the chance by reading a limitation into the claim language.

Second: Prolitec challenges the Board's underlying factual determination regarding Privas' disclosure of a volume-based selection of a control scheme. Prolitec asserts that the Board should have determined that the broadest reasonable interpretation of volume-based selection of a control scheme excluded Privas' use of a lookup table to determine a set point value based on the volume and the nature of the treated indoor area. Once again, if Prolitec wanted to limit the claims to exclude the volume-based control of Privas, it had the opportunity to do so during prosecution or through a motion to amend during the *inter partes* review proceeding. Instead, Prolitec wants this Court to fix a validity problem that Prolitec failed to address when it had the chance to do so.

18

Third: Prolitec challenges the bases articulated by the Board for combining Privas and Le Pesant. Despite Prolitec's attempts to create an issue where none exists, there is no inconsistency in the Board's finding that Le Pesant's statement regarding volume does not rise to the level needed to support an obviousness determination alone, while also finding that the same statement in Le Pesant is sufficient to invite combination with another reference that more explicitly describes the feature. The Board further properly considered that Privas is analogous art because it is from the "same field of endeavor" as the '068 patent, and Privas does not "teach away" from a combination with Le Pesant. The Board also properly found that Le Pesant does not *exclude* Privas' type of volume-based control, and that the '068 patent claims are substantially consistent with *both* approaches.

Finally in the alternative: even if this Court disagrees with the Board's combination of Privas and Le Pesant as obviating the '068 Patent, ScentAir asserts that the Board's determination that the challenged claims of the '068 patent are invalid as obvious should be affirmed based on the disclosure of Le Pesant alone.

## ARGUMENT

### I.    Standard of Review

Obviousness is a question of law with underlying issues of fact regarding, *inter alia*, the scope and content of the prior art, and the differences between the

prior art and the claims at issue. *In re Morsa*, 713 F.3d 104, 109 (Fed. Cir. 2013), cert. denied sub nom. *Morsa v. Patent and Trademark Office*, 134 S. Ct. 1317 (2014). On appeal, underlying factual determinations are reviewed for substantial evidence, and application of the legal standards of obviousness is reviewed *de novo*. *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013). Substantial evidence is more than a "mere scintilla of evidence" but something less than the "weight of the evidence." *In re Kotzab,* 217 F.3d 1365, 1369 (Fed. Cir. 2000) (citing *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000)). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Fleming v. Escort Inc.*, 774 F.3d 1371, 1375 (Fed. Cir. 2014).

## II.    The Board Did Not Err In Finding The Claims Unpatentable.

As shown below, Prolitec has failed to present this Court with any reasonable basis for overturning the Board's factual findings and legal conclusions as to Le Pesant and Privas rendering the '068 Patent obvious: the Board's factual determinations are supported by substantial evidence, and the Board's application of the legal standard of obviousness is sound. Moreover, the Board properly considered the claims as a whole.

## A.    The Board's Determinations Are Supported By Substantial Evidence.

An invention that would have been obvious to a person of ordinary skill at the time of the invention is not patentable.  *See* 35 U.S.C. § 103(a).  As reiterated by the Supreme Court in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 82 U.S.P.Q. 2d 1385 (2007), the framework for the objective analysis for determining obviousness under 35 U.S.C. § 103 is stated in *Graham v. John Deere Co.*, 383 U.S. 1, 148 U.S.P.Q. 459 (1966).  The Board conducted this very inquiry: "We have considered the scope and content of the prior art; the differences between the prior art and the challenged claims; the level of ordinary skill in the art; and the objective indicia of nonobviousness.  *See Graham v. John Deere Co.,* 383 U.S. 1, 18-19 (1966)."  Final Written Decision, A024.

### 1.    Substantial Evidence Supports The Board's Conclusion That Le Pesant Discloses "A Plurality of Control Schemes."

As a preliminary matter, the Board properly determined the broadest reasonable interpretation of "a plurality of control schemes" to be "a system of correlations between particular inputs and particular outputs for controlling the diffusion means, which permits a user to select a particular correlation based on user criteria."[2]  Final Written Decision, A009.

---

[2] Regardless of Prolitec having set forth the standard of review for claim construction in its appeal brief (Prolitec Appeal Br., p. 20), it has not in fact identified any errors with the Board's construction of "a plurality of control

In applying this construction in its factual assessment of the claims relative to the prior art, the Board considered the declarations of Dr. Garris, who provided extensive testimony as to how Le Pesant describes a plurality of control schemes, as compared to the declaration of Dr. Shedd.  Final Written Decision, A013-15; Garris Decl., A1280-81, ¶ 21; Garris Reply Decl., A1818-21, ¶¶ 15-21; Shedd Decl., A1225, ¶ 59.  Specifically, Dr. Garris described how Le Pesant's control electronics 12 utilizes (1) a pre-established program to control *flow rate* via air pump speed and (2) software structured around the time it takes to establish odour peak emission cycles to control *periodic timing*.  Garris Reply Decl., A1818-21, ¶¶ 15-21; Le Peasant, A1188, 7:44-46; *id.* at A1191, 13:1-6.

The Board correctly noted from Dr. Garris' testimony that Le Pesant "includes a microprocessor that may be programmed by the user to perform various sequences of operation of the diffusion device."  Final Written Decision, A011; Garris Reply Decl., A1819-20, ¶ 18.  From Le Pesant:

> The central processing unit 50 includes a [1] *microprocessor* 52 *programmed* to perform [2] a management execution programme from software recorded in read-only memory (ROM) 54. [3] A random-access memory (RAM) 56 is connected to microprocessor 52

schemes" or any other terms because, as the Board noted, its construction is consistent with the language of the specification, dictionary definitions, and the plain and ordinary meaning of control schemes as used in the claims.  Final Written Decision, A006 ("our analysis begins with, and remains centered on, the language of the claims themselves").  Because Prolitec does not ultimately challenge the Board's claim construction, the standard of review for claim construction is not relevant to the present appeal.

22

> in order to change with it any evolutionary data, in particular *parameter set-up and user programming* data for the performance of *various sequences* to activate combinations of drop diffusion means 4.

Le Pesant, A1190, 11:24-31 (emphasis added), as described in Garris Decl., A1280-81, ¶ 21 and Garris Reply Decl., 1819-1821, ¶¶ 16-20.  Here, Le Pesant clearly lays out [1] microprocessor hardware, with [2] a ROM-stored management execution programme, and [3] RAM programmed by a user for "various sequences" of parameters for liquid diffusion.

The Board further considered from Dr. Garris' declarations that Le Pesant includes multiple examples of how "the device may be operated according to a pre-established program instead of a user-set program."  Final Written Decision, A011; Garris Decl., A1280-81, ¶ 21; Garris Reply Decl., A1819-20, ¶¶ 17-18; Le Pesant, A1188, 7:40-46; *id.* at A1190, 11:24-31; 12:10-13; *id.* at A1191, 13:1-6, 13:26-29. Specifically, the Board considered and agreed with Dr. Garris that Le Pesant's varied examples of control schemes include "waking a user from sleep (Example 1) or from a coma (Example 2), or assisting in smoking cessation (Example 3.)." Final Written Decision, A011; Garris Reply Decl., A1820, ¶ 19; Le Pesant, A1191, 13:35-A1192, 15:17.

The Board also considered and agreed with Dr. Garris' explanation regarding additional disclosure within Le Pesant, stating "[e]xample 5 of Le Pesant discloses programming the device to emit a combination of odors using various

emission times and intervals, in order to prevent scent fatigue."  Final Written

Decision, A011; Garris Reply Decl., A1820, *id.* at A1822, ¶¶ 19, 23; Le Pesant,

A1192, 15:26-54.  The Board also took note of the fact that Dr. Shedd himself

even *admitted* that "EXAMPLE 5 relates to one complicated control scheme."

Final Written Decision, A013; Shedd Decl., A1222, ¶ 56.

In short, the Board found Dr. Garris' testimony and explanation regarding

Le Pesant's disclosure of a plurality of control schemes to be persuasive, and that

the testimony of Dr. Shedd even supports Dr. Garris' testimony and the disclosure

of a plurality of control schemes in Le Pesant.

Prolitec presents two main arguments as to why the Board's factual

determination was wrong:  (1) the Board determined that the broadest reasonable

interpretation of "control scheme" is not limited to pre-established control schemes

installed on the device, but also includes control schemes programmed by the user;

and (2) the Board mischaracterized the claim language by stating that *permitting*

inclusion of multiple pre-established programs is equivalent to *providing* a

plurality of control schemes.  Prolitec Appeal Br., pp. 22-26.  Each argument is

meritless:

### (i)    Substantial Evidence Supports The Board's Conclusion That Control Schemes Include Those Programmed By The User.

With respect the first argument, Prolitec attempts to unduly narrow the meaning of control schemes to exclude the control schemes of Le Pesant that are user-programmed, as opposed to those that are pre-installed.  Specifically, Prolitec invokes the *purpose* behind the claims by stating that "the '068 patent teaches a device with a user-selectable set of programs (i.e., control schemes), not just a device with programmable settings like the control electronics in Le Pesant." Prolitec Appeal Br., p. 24.

Prolitec's purpose-based argument is a ploy to improperly read limitations into the claim language from the specification.  "The court's task is not to limit claim language to exclude particular devices because they do not serve a perceived 'purpose' of the invention.  Rather, the district court's function is to interpret claims according to their plain language unless the patentee has chosen to be his own lexicographer in the specification or has clearly disclaimed coverage during prosecution."  *E-Pass Techs. v. 3Com Corp.*, 343 F.3d 1364, 1370 (Fed. Cir. 2003) (rejecting the district court's construction that, in view of the perceived purpose of the invention, a claimed "card" had to be interchangeable with a credit card). Indeed under the broadest reasonable interpretation of this term, there is no basis for limiting the meaning of a plurality of control schemes to *only* include those

schemes that are *pre-installed* on a device.  As the Board correctly noted, controlling the device "according to pre-established programming chosen by the user . . . or to a pre-established program" still amounts to a plurality of control schemes, particularly under the broadest reasonable interpretation of this language. Final Written Decision, A015.

If Prolitec wanted to limit the claims to "a plurality of pre-installed control schemes," it could have done so at any time during prosecution or through a motion to amend during the *inter partes* review proceeding.  Instead, Prolitec wants this Court to fix a validity problem that it failed to address when it had the chance by reading a limitation into the claim language that is not supported by the substantial evidence considered by the Board in reaching its conclusion.

> **(ii)   The Board's Conclusion That Multiple *Pre-Installed* Control Schemes May Be Installed on Le Pesant's Device Does Not Mischaracterize The Claim Language.**

Prolitec similarly errs with its second argument that the Board conflated "permitting" with "providing."  Prolitec Appeal Br., pp. 25-26.  Contrary to this argument, the Board merely clarified that Le Pesant **also** satisfies Prolitec's narrow and unsupported limitation of "control schemes" to mean "*pre-installed* control schemes."  Specifically, the Board showed how Prolitec's argument fails under either interpretation.  Final Written Decision, A015.  The Board cites **directly** to Le Pesant's explanation of its multiple control schemes in support of its conclusion,

quoting the reference as follows: control "according to established programming chosen by the user . . . or to a pre-established program," which is found at Le Pesant, A1188, 7:44-46.[3]

Prolitec, however, tries to turn the Board's "even if" explanation into a failure by the Board to appreciate that there must be multiple *pre-installed* control schemes *on the device*.  Prolitec Appeal Brief, pp. 25-26.  This argument goes too far—the Board had already explained that there are *a plurality of* control schemes *provided* by Le Pesant, and that Le Pesant permits addition of more than one *pre-installed* control schemes, even though that addition is neither required by the claims nor warranted under the Board's broadest reasonable interpretation of the claims.  Final Written Decision, A014-15.

Here, Prolitec seeks to shore up its flawed reasoning as to this point with its driver's seat adjustment example.  Prolitec Appeal Br., p. 24 ("If you buy a new car and you sit in the driver's seat…").  Just as Prolitec had earlier misdirected the Court's attention to the exemplary-but-unclaimed "dial setting" specification example a number of times in its section on "The Patented Invention," here again

---

[3] As this carefully supported reasoning by the Board shows, Prolitec's claim that the Board's decision should be reversed because the Final Written Decision failed to cite any evidence or anything in the prior art or the record to support its conclusion is wholly without merit.  Prolitec Appeal Br., p. 19; s*ee, e.g.*, *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1353 (Fed. Cir. 2014) (arguments criticizing the district court's opinion are immaterial since this Court "sit[s] to review judgments, not opinions.") (quoting *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed. Cir. 1983)).

Prolitec seeks to misdirect the Court beyond the claim limitations at issue. Indeed, Prolitec's driver's seat adjustment example—repeated twice within these three pages of its brief—goes even further afield: it is not an example from the specification of the '068 patent, nor even from expert testimony—it is mere attorney argument from an oral hearing. Prolitec Appeal Br., pp. 24-26. Prolitec's misdirection should be disregarded; instead, the Board's finding as to a plurality of control schemes and disclosed by Le Pesant should be affirmed.[4]

## 2. Substantial Evidence Supports The Board's Finding That Privas Discloses Volume-Based Control.

Prolitec next asserts that the Board erred in its underlying factual determinations by not ascertaining the differences between the claims and the cited art regarding volume-based control (Prolitec Appeal Br., pp. 27-30): once again, Prolitec has not demonstrated that the Board's determination was unsupported by substantial evidence.

Both ScentAir and Prolitec agree that Privas' liquid diffusion device is controlled according to a "set point" as to the frequency of spray applications. Petition, A1029; Response, A1115-16. Privas describes two embodiments: in the *industrial* embodiment, the set point for the frequency of spray applications is

---

[4] The "plurality of control schemes" limitation of the '068 Patent is further disclosed in additional references described in the IPR Petition but deemed redundant by the PTAB, particularly the Tokuhiro and Almero references. *See, e.g.*, Petition, A1033-1036; *id.* at A1049-52.

directly based on measured air circulation by an aeraulic probe S; whereas in the *household* embodiment, the set point or control scheme for the frequency of spray applications is found in a *lookup table* or chart based on "the volume and nature of the room being treated." Privas, A1166, ¶ 3; *id.* at A1175; *id.* at A1168, ¶ 2; *id.* at A1177; Garris Reply Decl., A1823-26, ¶¶ 28-32.

During the *inter partes* review, Prolitec proffered arguments that Privas' "set point" represents air circulation (based on the industrial embodiment's aerolic probe) and therefore is not the equivalent of volume. Shedd Decl., A1231, ¶ 73-A1234, ¶ 77. The Board, however, considered and agreed with ScentAir and Dr. Garris that it is the second, household embodiment that "discloses selecting a set point based on, or corresponding to, the volume of the space to be treated, by providing a lookup table that determines the set point according to the 'volume and the nature of the room being treated.'" Final Written Decision, A020; Privas, A1168; Garris Reply Decl., A1824-25, ¶ 30.

Seeing the apparent futility of its previous arguments, Prolitec now asserts "the record fails to point to any section of Privas that discloses multiple programs on its device" and, because Le Pesant's control schemes are not volume-based, there is nothing to suggest that selecting different volumes in Privas would change the control scheme in Le Pesant. Prolitec Appeal Br., pp. 27-30. These arguments fail.

*First*, as the Board noted, it had already found Le Pesant discloses the plurality of control schemes limitation.  Final Written Decision, A018.  *Second*, Prolitec is wrong that there is nothing in the record to indicate Privas discloses multiple programs.  As noted by the Board and ScentAir on numerous occasions, the record is replete with explanations of how Privas explicitly describes a *lookup table* "to be used when determining the set point value as determined by the volume and the nature of the room being treated."  Final Written Decision, A019, FN 6; Privas, A1166; *id.* at A1168; Garris Decl., A1291, ¶ 40; Garris Reply Decl., A1823-26, ¶ 28-32.  The set point value is for "the frequency of the spray applications or series of sprays of product into the tank," which differs based on both the volume of the room and the nature of the room being treated.  Privas, A1166; *id.* at A1168.  In other words, each line in Privas' lookup table represents *different* control scheme for each room type and volume (like the exemplary-but-unclaimed table of dial-settings in Figure 4 of the '068 Patent).

*Third*, Prolitec again overstates the Board's position with respect to Le Pesant's disclosure regarding volume-based control.  While the Board found limitations with Le Pesant's discussion of scenting room volumes of 30-100 cubic meters, it nonetheless concluded Le Pesant "suggests that its device is suitable for various volumes."  Final Written Decision, A017; Garris Decl., A1281-82, ¶ 22.  Moreover, while the Board reached the conclusion that Le Pesant alone did not

render volume-based control obvious, it concluded Le Pesant's volume discussion "provides sufficient reason to combine Le Pesant with Privas, which discusses volume-based control."  Final Written Decision, A021.

Thus, despite Prolitec's attempt to create an issue where none exists, there is no inconsistency in the Board's finding that, while Le Pesant's statement regarding volume does not rise to the level of a single-reference obviousness determination, it is sufficient to invite combination with another reference that more explicitly describes the feature—here, Privas.[5]  The Board's decision thus gives this Court ample basis to find "a reasonable person might find that the evidentiary record supports the agency's conclusion."  *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085 (Fed. Cir. 2000).

### B.    In Reaching Its Legal Conclusion, the Board Properly Considered Its Analysis of the Claim Elements In The Context Of The Claims As A Whole.

Throughout its brief, Prolitec claims the Board took claim elements out of context of the claims, and therefore never addressed the differences between the claim limitations and the references (*see*, *e.g.*, Prolitec Appeal Br. at 19, 22): yet more unsupported misdirection by Prolitec.

---

[5] The volume-based control limitation of the '068 patent is further disclosed in additional references described in the IPR Petition but deemed redundant by the PTAB, particularly the Adiga and Eso references.  *See, e.g.*, Petition, A1057-59.

It is a well-known axiom that "[w]hen analyzing a patent claim for obviousness, the claim should be considered as a whole, but the differences between the claim and the prior art need to be identified to place the obviousness analysis into proper perspective." *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 717 (Fed. Cir. 1991) (emphasis added).  Once these differences are ascertained, the analysis centers on the ultimate legal question, "whether these differences are such that the claimed invention as a whole would have been obvious to one of ordinary skill in the art at the time of the invention." *Gardner v. TEC Sys., Inc.*, 725 F.2d 1338, 1345 (Fed. Cir. 1984).

The Board followed this precise formula.  In determining the differences between the claims and the prior art, the Board acknowledged that "[t]here is no material dispute between the parties regarding whether most of the limitations of claims 1 and 24 are disclosed by Le Pesant."  Final Written Decision, A012.  "Nor does Prolitec dispute whether any of the limitations of the dependent claims is disclosed by Le Pesant." *Id.* at A012.  "The parties' dispute centers on whether Le Pesant teaches *control schemes*, and whether a person of ordinary skill in the art would have found it obvious to modify Le Pesant to select a control scheme based on the volume of the space to be treated." *Id.* at A013 (emphasis added by the Board).

Once the Board ascertained the disputed differences between the claims and the prior art, the Board focused its analysis on the ultimate legal question of whether these differences are such that the claimed invention as a whole would have been obvious to one of ordinary skill in the art at the time of the invention.

The Board began its analysis noting that its construction of "a plurality of control schemes" "begins with, and remains centered on, the language of the claims themselves." Final Written Decision, A006. Specifically, the Board considered how the claim term is used in the context of both claim 1 and claim 24, finding that "a control scheme is 'based on characteristics of the liquid' being diffused into the air, and the 'level of treatment desired for the space.'" *Id.* at A006. The Board also noted that "[e]ach control scheme then specifies operational parameters for the appliance, including the flow rate of the liquid and the periodic timing of operation of the diffusion means." *Id.* at A006. The Board *further* noted that "[t]he control schemes of claim 24 also specify the same two operational parameters of flow rate and periodic timing, but the claim does not require particular inputs to the control scheme." *Id.* at A006. The Board *still further* acknowledged that "[i]n both claims, a user then selects a control scheme based on the particular volume of the space to be treated." *Id.* at A007.

Such extensive review by the Board undercuts Prolitec's broad and varied assertions to the contrary, here that: "the Final Written Decision introduced a

33

construction of 'a plurality of control schemes' without addressing the term's relation to the other requirements of the claims."  Prolitec Appeal Br., p. 19. Instead, the Board's extensive review and consideration of the claim context establishes that the Board's analysis of the legal question of obviousness most certainly addressed the claim language as a whole.

### C.    The Board Did Not Err In Its Determination That Le Pesant and Privas Are Properly Combinable.

The Board correctly considered and agreed with ScentAir and Dr. Garris that there are multiple reasons for combining Le Pesant with Privas.  Garris Decl., A1280-82, *id.* at A1291, ¶¶ 21-22, 40; Garris Reply Decl., A1816-18, *id.* at A1821-22, *id.* at A1822-23, *id.* at A1826-28, *id.* at A1829, *id.* at A1830, ¶¶ 9-14, 22, 25, 33-39, 43, 45; Le Pesant, A1189, 9:41-46, 10:3-10; *id.* at A1191, 13:1-6, 13:26-29; *id.* at A1192, 15:43-47, 15:55-57.  The disclosures of Privas, the '068 patent, and Le Pesant all show Privas and Le Pesant are indeed analogous prior art because they are "within the same field endeavor" and "reasonably pertinent" to the problem addressed by the '068 patent.  *See, e.g.*, *In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004).

*First*, the Board determined that "Le Pesant suggests treating rooms of varying volumes, at least ranging between 30 and 100 cubic meters."  Final Written Decision, A021.  While the Board did not find this suggestion to be reason enough *alone* for one of ordinary skill to modify Le Pesant to include volume-

34

based control (Final Written Decision, A016-17), the Board readily attests that this statement "provides sufficient reason to combine Le Pesant with Privas, which discussed volume-based control." *Id.* at A021. Prolitec's appeal seeks to conflate the Board's clear reasoning on these two distinct points to create a "contradiction" (Prolitec Appeal Br., pp. 34-36) where none exists.

*Second*, the Board considered and agreed that Privas is analogous art because it is from the "same field of endeavor" as the '068 patent. Final Written Decision, A022. Specifically, the Board found ScentAir's expert, Dr. Garris, to be persuasive on this point, as he explained that the Privas device is "structurally and functionally akin to the subject matter of the '068 patent - but with an additional diffusion means." Final Written Decision, A022; Garris Decl., A1288, ¶ 35. As the Board correctly noted, Prolitec has not pointed to any functional differences that would distinguish the devices in a meaningful way. Final Written Decision, A022. The Board then goes on to identify several structural similarities between the '068 patent and Privas, including the reservoir of liquid and the atomizer/venturi. *Id.* at A023. The Board also noted that both Privas and the '068 patent both include discussion of the same problem of maintaining a constant level of odor within the space being treated. *Id.* at A023; '068 patent, A038, 1:36-38; *id.* at A042, 10:22-26; Privas, A1153, Abstract.

Prolitec tries for yet another bite at the apple at this juncture, asserting that Le Pesant and Privas are not combinable on the basis of what it characterizes as "the irreconcilable purposes sought by the programs in Le Pesant and in Privas." Prolitec Appeal Br., p. 32.  Specifically, Prolitec claims that—because Le Pesant is directed to a program that establishes odor-peak emission cycles, and Privas is directed to a program that "maintain[s] a constant level of odor in the indoor space"—modifying Le Pesant to incorporate the volume-based control from Privas would render Le Pesant unsuitable for its intended purpose.  Prolitec Appeal Br., pp. 33-34.

Prolitec turns a blind eye, though, to its own '068 patent, which addresses both variable and constant scent.  In addition to its discussion of varied treatment, claim 11 recites, for example recites: "The method of claim 1, wherein a length of pause in the periodic operation of the diffusion means for at least one of the control schemes is selected so that the level of treatment within the space *stays substantially constant* and near the desired level of treatment."  '068 patent, A042, claim 11 (emphasis added); *see also id.* at 1:35-38 (discussing disadvantages of prior art that fails to "remain within a desired range of concentration.").  Privas is thus "reasonably pertinent" to a problem addressed by the '068 patent.  Moreover, combining Privas' concept of volume-based control with Le Pesant does not mean that Le Pesant's control schemes would be supplanted by Privas' control

36

schemes—merely that Le Pesant's control schemes would be updated to incorporate an additional input variable, namely the size of the room being treated. Prolitec posits "the level of scent cannot be both constant…and peaked…just like land cannot be both flat and mountainous" (Prolitec Appeal Br., pp. 19-20); but certainly a scent diffuser—like the one described in the '068 patent itself—can include a plurality of control schemes, some constant and some peaked, just as the state of Virginia includes flat Piedmont and mountainous Appalachians.

## III.    Alternatively, This Court Should Affirm The Board's Legal Conclusion of Obviousness Based On Le Pesant Alone.

The Board's determination that the challenged claims of the '068 patent are invalid as obvious should be alternately affirmed based on the disclosure of Le Pesant alone. *Jennings v. Stephens*, 135 S. Ct. 793, 798 (2015) ("An appellee who does not take a cross-appeal may 'urge in support of a decree any matter appearing before the record, although his argument may involve an attack upon the reasoning of the lower court.'") (quoting *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924)).

As ScentAir explained in its Reply Brief, Dr. Garris provided a detailed and elaborate explanation on the common sense that make volume-based diffusion obvious.  He started with Le Pesant's own teaching that the device can be used to scent "the volume of residential rooms and meeting rooms, typically containing air volumes of between 30 and 100 cubic meters."  Garris Decl., A1281-82, ¶ 22.  Dr.

37

Garris then explained the relationship between concentration and volume—well-known in the field of the '068 patent. *Id.* at A1281-82, ¶ 22. In reaching this conclusion, Dr. Garris set forth not only his knowledge and experience, but echoed the Examiner's finding that "it is well known that the size of the room affects the dispersal needed to get the desired effect." *Id.* at A1281-82, ¶ 22.

Dr. Shedd's testimony regarding his definition of "concentration" not only squarely supports Dr. Garris on this point, but also further establishes that volume-based control is obvious. Dr. Shedd opines that there are three groups of variables relevant to liquid diffusion: variable related to the liquid itself (viscosity, volatility, etc.), variables related to the characteristics of the space treated (volume, air flow, etc.), and variables related to the device (size of particles formed, duty cycle, etc.). Shedd Decl., A1206, ¶ 26. Of these, Dr. Shedd identifies volume alone as both "***fundamental***" to liquid diffusion concentration, and "***easy*** for most users to measure or estimate." *Id.* at A1228,¶ 65; *id.* at A1230, ¶ 69; Garris Reply Decl., A1816-18, *id.* at A1822-23 ¶¶ 9-14, 24-26. Le Pesant touches on all three groups of variables, including volume. *See* Garris Reply Decl., A1818, *id.* at A1822-23, ¶¶ 13, 25. Thus, volume-based control is one of a "finite number of identified, predictable solutions with a reasonable expectation of success," and choosing volume to improve Le Pesant's liquid diffusion device is "obvious to try" in liquid diffusion—a field Dr. Shedd states is marked extensively by "trial-and-error"

approaches. *KSR v. Teleflex Inc.*, 550 U.S. 398, 403, 421 (2007) ("Rigid preventative rules that deny recourse to common sense are neither necessary under, nor consistent with, this Court's case law."); Shedd Decl., A1205-06, ¶ 25; *id.* at A1207, ¶ 28; Garris Reply Decl., A1816-18, *id.* at A1821-23, ¶¶ 9-14, 22-27.

ScentAir therefore urges this Court to affirm the Board's legal conclusion of obviousness under this alternative basis.

## CONCLUSION

For the reasons set forth above, ScentAir respectfully requests that this Court affirm the Board's rejection of claims 1, 3-5, 9-13, 15, 22-24, 26, 28, and 33.

February 26, 2015                                    Respectfully submitted,

_____

Joshua B. Pond

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing document with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system and served a copy on counsel of record, this 26th day of February 2015, by the CM/ECF system and electronic mail.

Joshua B. Pond
Kilpatrick Townsend & Stockton LLP
607 14th Street, NW, Suite 900
Washington, D.C. 20005
(202) 508-5854
jpond@kilpatricktownsend.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned certified that this

brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B).

Exclusive of the portion exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir.

R. 32(b), this brief contains 9,431 words, as counted by the word-processing

system used to prepare the brief.

Joshua B. Pond
Kilpatrick Townsend & Stockton LLP
607 14th Street, NW, Suite 900
Washington, D.C. 20005
(202) 508-5854
jpond@kilpatricktownsend.com